UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| PHILIP JAY BERG, | : | Bankruptcy No. 05-39380DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion of the Chapter 7 Trustee (the "Trustee") for an Order Approving Settlement Agreement (the "Settlement Motion") By and Between the Trustee and Carpenters Funds of Philadelphia and Vicinity (the "Funds"). The Settlement Motion seeks to resolve the Trustee's Objection to the Funds' Claim #14 (the "Objection") by compromising the amount of the claim from $48,225.93 to $38,000 and treating it as secured.[1] The debtor Philip J. Berg ("Berg") objects to the Settlement Motion.[2]

---

[1] The Objection was submitted to me on a Joint Statement of Uncontested Facts (the "Statement") which has not been placed into the record or incorporated into this contested matter. Indeed I cannot even find that it was filed with the Court. Since Debtor is not a party to the Settlement Motion and had no notice of the contents of the Statement, I will not rely on it herein. However, it does not appear to state any material facts that have not otherwise been made part of the record of the contested hearing.

[2] The Trustee acknowledges that the value of Debtor's estate exceeds the total filed claims, including that of the Funds. Where the debtor has a pecuniary interest as a result of there being a demonstrable surplus that will be returned to him, he is a party in interest that may object to proofs of claim in a chapter 7 case. In re 60 East 80th Street Equities, Inc., 218 F.3d 109, 115-16 (2d Cir. 2000); White v. Coors Distributing Co. (In re White), 260 B.R. 870, 875 (8th Cir. BAP 2001); In re Nefferdorf, 71 B.R. 217, 219 (E.D. Pa. 1984).

Following an evidentiary hearing, I conclude that the Trustee has not sustained his burden of proof under In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) for approval of the Settlement Motion.

**BACKGROUND**

On June 2, 2005, the United States District Court for the Eastern District of Pennsylvania entered an order (the "Order") imposing judgment in the amount of $10,668.78. against Berg in connection with the Funds' Motion for Rule 11 Sanctions. That sum represented attorneys' fees and costs incurred through May 9, 2005 by the Funds, a third party defendant in a civil action captioned Richard Holdsworth and Elizabeth Holdsworth v. Philip J. Berg. Exhibit T-1. The Order further provided that the Funds "may apply to the District Court or to any court in which enforcement of this Order is sought for any further reasonable attorneys' fees and costs they incur in the collection and enforcement of this Order." Id. Berg filed an appeal of the Order with the Third Circuit Court of Appeals ("Circuit Court") on September 2, 2005. Exhibit T-3. On November 29, 2005 Berg filed a petition in bankruptcy,[3] and sent a letter to the Funds' counsel on December 7, 2005 enclosing a time-stamped copy of his Chapter 13 petition. A briefing order was entered

---

[3] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

by the Circuit Court on December 22, 2005 directing Berg to file his brief and appendix by January 31, 2006.

As Berg had not advised the Circuit Court of his bankruptcy, the Funds' counsel filed a Suggestion of Bankruptcy on January 6, 2006. Exhibits T-3 and T-4. In the letter to the Clerk, the Funds' counsel stated his belief that the appeal would be stayed and requested advice from the Court as to further proceedings, including whether the stay issue should be briefed. On January 31, 2006 Berg filed his brief in the underlying appeal. On February 15, 2006 the Clerk directed Berg to advise the Circuit Court within 14 days (i.e., March 1, 2006) of the status of his bankruptcy and whether automatic stay relief has been sought or granted with respect to the appeal. Exhibits T-3 and T-6. Berg did so on March 13, 2006 but the Funds' brief was due under the original briefing schedule before he responded. Fearing default if they ignored the briefing schedule, the Funds filed their brief on March 7, 2006 with a motion to file a supplemental appendix. Exhibit T-3. Berg's belated statement of position confirmed his bankruptcy filing and stated, based on advice of his bankruptcy counsel, that he had not sought nor did he intend to seek stay relief and the automatic stay should therefore apply. However, he recognized that both he and the Funds had already filed briefs and therefore requested prospective application of the stay only. Exhibit T-7. On May 24, 2006 the Circuit Court stayed the appeal.

On January 13, 2006 the Funds filed a secured claim in the amount of $22,523.26 ("Claim #5").[4] Claim #5 consists of (1) original judgment amount of $10,668.78 in attorneys

---

[4] While the Funds' proof of claim asserted real estate collateral, there is no evidence in this record that the judgment has been recorded as a lien against any of Berg's real estate. The Funds' statement in their Response that they transferred their judgment to Montgomery County before the

-3-

fees and costs through May 9, 2005, (2) post judgment interest of $216.56 from June 2, 2005 to January 13, 2006 (the claim filing date) and (3) additional attorneys fees and costs from May 11, 2005 to January 13, 2006 of $11,637.92.[5]  Of that amount, $1,472.47 was incurred after the bankruptcy was filed and the Funds were given notice of the bankruptcy. On March 21, 2006 the Funds amended the claim to $48,725.93 ("Claim #14).  The Funds now claim additional fees and costs of $23,240.83 for the period September 6, 2005 to February 28, 2006, and $10,857.00 for the period March 1, 2006 to March 16, 2006. The parties agree that the increase is principally due to work associated with Berg's appeal of the judgment although the precise amount has not been quantified in this record.

The Trustee objected to Claim #14 contending that it did not represent an allowable secured claim but consented to allowance of a secured claim of $10,668.78, i.e., the judgment amount.  While the Objection did not articulate a legal basis, at the hearing the Trustee's counsel stated that he believed $38,000 of additional attorneys' fees and costs on a $10,668.78 judgment was not reasonable.  Debtor, who would be the real beneficiary of a favorable ruling on the Objection, did not appear or join in the Objection.[6]  As noted above,

---

bankruptcy is the only reference to this issue and it is totally devoid of evidentiary support. However, because this is a 100% payout to unsecured creditors, whether the Funds' claims are secured or not is irrelevant.

[5] This claim was not entered into the record but I take judicial notice of it, not for the truth of the claim, but to understand what has been asserted by the Funds.  Fed.R.Evid. 201.

[6] Berg's testimony that he was unaware of the Objection and the hearings thereon is not credible.  Presumably letting the Trustee advance his cause, he saw no reason to appear.  Indeed at the earlier hearing I questioned the Trustee's counsel as to what Berg's position was since I could not understand the estate's interest in reducing Berg's exposure when he failed to object himself.

before a ruling was delivered, the settlement was reached, and the Settlement Motion followed.

While the Trustee did not appear to explain the exercise of his business judgment to compromise Claim #14 as requested, his counsel argues that the settlement is in the best interests of the estate because (1) there is a disputed issue as to whether the Funds are entitled under the Order to the full amount of the legal fees asserted in Claim #14; (2) the Funds have agreed to compromise the fees and costs they contend they would be due under the Order; and (3) the settlement eliminates the need to litigate this issue and provides a benefit to Debtor's estate without protracted and costly litigation. His evidence consisted of the documents referred to above and the testimony of Kent Cprek, Esquire ("Cprek"), the Funds' lawyer. Cprek was involved in the settlement negotiations which he stated were very intensive. However, as he did not handle the litigation upon which the claim is based, he had no knowledge of the services that are the underlying basis of the claim for attorneys' fees. He stated that he relied on the billing records but failed to identify them as business records of the Funds to overcome the Debtor's counsel's evidentiary objection to their admission.

The Debtor's objection to the settlement raises three points. First, like the Trustee he contends that the costs and fees are excessive, even as reduced by $10,000. He reasons that $37,000 of attorneys' fees to recover a $10,000 judgment is inherently unreasonable. Additionally he contends that the Funds cannot recover any fees for services performed after the bankruptcy filing, as to which it was given notice, since the automatic stay was

in effect. Finally, he notes that the Order is on appeal, and the settlement should have taken into consideration the possibility of the judgment being reversed.

**DISCUSSION**

As the Trustee correctly notes, the Third Circuit's <u>Martin</u> decision supplies the test for determining whether to approve a motion under Bankruptcy Rule 9019 of a compromise or settlement. The Court must "assess and balance the claim being compromised against the value to the estate of the acceptance of the compromise proposal" focusing on four factors: "(1) the probability of success in the litigation; (2) the likely difficulty in collection; (3) the complexibility of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." 91 F.3d at 393. In applying this test to the matter at hand, I reiterate that without regard to the outcome here, creditors will receive a 100% distribution on their claims, and it is only the residual value of the estate that will be returned to Debtor that will be impacted by the settlement. Thus, the second factor is not applicable as the Trustee has sufficient estate assets to pay creditors with or without a compromise of this claim.

<u>Probability of success on the merits.</u> The objections raised by the Debtor go to the first factor, <u>i.e.</u>, the probability of success of the Trustee's objection to the Funds' claim for attorneys' fees. Referred to as the American Rule, a party is normally not allowed to recover its attorneys' fees and costs from the opposing party unless there is a contractual, statutory or other legal basis for an exception. <u>Summit Valley Industries Inc. v. Local 112, United Broth. of Carpenters and Joiners of America</u>, 456 U.S. 717, 721 (1982). In the instant case,

the Order provides the legal basis for a deviation from the American Rule.[7]  It provides that the Funds may apply to a court of appropriate jurisdiction for an award of legal fees and costs incurred in collecting and enforcing its judgment.

The Trustee has provided no evidence with respect to his rationale for agreeing to an allowed Funds' claim of $38,000.  Thus, I do not know whether he examined the billing records to determine whether the services provided by the Funds' counsel were of the type contemplated to be recovered under the Order, ie,. for collecting and enforcing the judgment.  The Trustee and even the Debtor appear to assume that the Funds are entitled to recover fees for all the work performed, only contesting the reasonableness of the amounts charged, and in the Debtor's case, raising the automatic stay issue and pendency of the appeal.  It does not appear that the Trustee has considered whether under the Order I can award the fees incurred in pursuing the appeal. See Cooter & Gell v. Hartmarx Corp., et al., 496 U.S. 384 ( 1990).[8]  Even assuming I can estimate the Funds' claim to appellate fees for the purpose of allowance, there is nothing in this record that indicates that the Trustee has given any consideration to the merits of the appeal and whether the Funds would be entitled to their fees under Fed.R.App.P. 38 or the Order.  Since the bulk of the objectionable fees were generated by the pursuit of the appeal, this issue is fatal to the settlement.

---

[7] The Funds, in their Response, make references to the fee-shifting provision of ERISA, arguing that the amount of an award need not be proportional to the amount of the underlying damages.  I am at a total loss to understand what the instant case has to do with the ERISA statute.  The damage award was under Rule 11 according to the Order.

[8] The decision holds that a district court does not have the authority to award attorneys' fees incurred on appeal of a Rule 11 sanction.  That is not to say that fees cannot be recovered but that Federal Rule of Appellate Procedure 38, not the Order, provides the grounds for an award upon a determination by the appellate court that the appeal has been frivolous.  Id. at 406-07.

Because I find that the Trustee has either not adequately analyzed or adequately explained his analysis of the possibility of the Funds' potential success on the merits of their claim, I decide this factor adversely to the Trustee. While not necessary to the decision but in the interests of providing some guidance to the parties, I will nonetheless address Berg's grounds for objection.

Debtor's argument that the automatic stay is a barrier to reimbursement of these fees, if otherwise authorized, is without merit and indeed rather brazen. His position that fees should not be allowed for work done after the bankruptcy petition was filed directly contradicts his statement to the Court of Appeals and his own conduct. In response to the Court of Appeals' inquiry to him regarding the stay, he replied that it should apply to the appeal but stated:

> Obviously, I am aware that I filed my brief and I just received the brief from opposing counsel, so I am requesting that the Court stay proceedings at this time.

Exhibit T-7 (emphasis added). Not only did Berg pursue his appeal without regard to any bankruptcy stay but his response to the Circuit was untimely so that the Funds had no choice, short of default, not to proceed to prepare and file their brief. Berg's position is totally disingenuous, especially in light of Berg's failure to notify the Circuit of his bankruptcy (the Funds did) and the Funds' efforts to discover whether the stay was applicable to the appeal. Exhibit T-4.[9]

---

[9] In a Status Report Order entered on May 24, 2006, the appeal was stayed and Berg was required to file a status report every 90 days until the stay was lifted or the bankruptcy was

Whether or not the Funds are entitled to reimbursement of appellate costs under the Order, it is conceded that any fees and costs must be reasonable to be recovered as the Order expressly so provides, and the Funds' entitlement is based on the Order. Exhibit T-1 ("may apply ... for any further reasonable attorneys' fees and costs they incur in the collection and enforcement of this Order'). Berg argues that the claimed amount is *per se* unreasonable because it is disproportionate to the amount of the judgment. The Funds respond that there is no requirement of proportionality. Neither offer any relevant support for their position.[10] I reject the notion that the claim is objectionable simply because it is disproportionate to the original judgment. That is not to say that the amount of fees that have been incurred in enforcing and collecting the judgment are reasonable. I believe they need to be examined more closely when this imbalance is apparent. The problem with assessing the reasonableness of the claim is that the Trustee did not appear to explain that he reviewed the services for which compensation was sought and what he concluded nor did the Funds produce anyone who was familiar with the Funds' legal activities to explain why they were taken. While I am quite accustomed to examining billing records in support of fee

---

discharged. Berg has filed five of such reports, the last one on January 8, 2008. Exhibit T-3. The Funds have never asked that the stay be lifted.

[10] Debtor provides no authority other than his counsel's conviction while the Funds cite to ERISA cases which, as noted above, have no relevance to this contested matter. I believe both positions miss the mark. There are many reasons why a litigant would incur fees to collect a judgment that dwarfs the costs of doing so. Litigation is not driven solely by a cost/benefit analysis. By the same token, enforcement fees that greatly exceed the judgment amount require careful scrutiny where the cost considerations that usually guide litigation under the American Rule are not present.

applications of professionals in this Court, when the amounts are challenged as excessive, there needs to be more presented than the firm's bare billing records to substantiate the request. For example and without regard to whether appellate costs are authorized under the Order, I don't know what the legal issues were that required the work that was performed – were they complex so as to generate thousands of dollars to prepare the appellate brief or should it have taken, as Berg contends his brief did, the expenditure of several thousand dollars of time. More significantly, I don't know that the Trustee ever asked that question. In short, I have no sense from this record whether the Funds would likely be able to demonstrate the reasonableness of their claim.

<u>Complexity of the litigation.</u> The Trustee intones a familiar mantra in support of the settlement, <u>i.e.</u>, it avoids costly and protracted litigation. I fail to understand how that is so. Once Berg objected to the settlement, it became clear that the Funds were going to have to do more to prove their claim, and the Trustee would have to do more to justify paying it. The record I require on the settlement of a claim for attorneys' fees and costs is not very different from the record on the claim objection itself. A claim objection hearing is simply not costly and protracted litigation. The burden is ultimately borne by the claimant, <u>i.e.</u>, the Funds, to establish their claim. More significantly, the cost of litigation is borne by Berg in this 100% asset case. It would appear that if Berg wants the Trustee to litigate and not settle (assuming he has standing to do so), the Trustee should not have a concern about costs to the estate since they will merely diminish the equity remaining for Berg.

Paramount interest of creditors. As noted, whether the claim is settled or paid in full has no bearing on creditor recoveries. The only implication for creditors is whether the litigation will delay their distribution and the closing of the estate. In connection with the status hearing on the pending Trustee's complaint to deny Berg his discharge, the parties acknowledged that there would be no need for this relief if the Trustee paid all creditors in full as he believed he would be able to do based on the assets in the estate. However, I was advised that until the tax returns were completed, the Trustee was unable to confirm the full distribution and until then he would not withdraw his complaint. He estimated an additional 90 days to accomplish the foregoing and close the case. A conference is now scheduled for April 16, 2008 to assess the status of the Trustee's administration. As this proposed time line sets the minimum parameters for creditor distributions, it appears that any claim litigation concluded before that date would not cause undue or, for that matter any, delay that would impact creditors adversely.

I have no doubt that the claim objection could be resolved well within that time frame. Nor do I believe that the appeal of the judgment that Berg has had stayed should effect this analysis. Since creditor recoveries are unaffected by the outcome of the appeal, the Trustee has no interest in the litigation and therefore no duty to pursue it. Boldt v. Crake et al. (In re Riverside-Linden Investment Co.), 925 F.2d 320, 322 (9th Cir. 1991);[11] In the Matter of

---

[11] The Riverside-Linden Court disapproved the trustee's attorneys fees for an investigation of a claim not objected to by a solvent debtor "when a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals." Id.

Sinclair's Suncoast Seafood, Inc., 140 B.R. 588, 592 (Bankr. M.D. Fla. 1992). The Trustee can perform his statutory duty to expeditiously administer the estate and affect a complete distribution to creditors notwithstanding the pendency of the appeal. So long as the Funds' claim is contested, he would simply hold back from the distribution to Berg of the equity in the estate, the amount of the Funds' proof of claim pending resolution of the appeal and determination of any legal fees under Fed.R.App.P. 38. Seemingly there would be an incentive for Berg to move forward with the appeal to finally liquidate that claim. Because the Trustee will not be able to close the estate (as opposed to make a distribution to creditors) until the appellate proceedings are concluded, I will *sua sponte* lift the stay which serves absolutely no bankruptcy purpose so that Third Circuit Court can decide the fully briefed appeal and the entitlement to attorneys' fees.

Having reviewed the Martin factors in some detail, I find that the Trustee has not sustained his burden and accordingly I do not grant the Settlement Motion. Berg shall have 15 days to join or supplement the Trustee's Objection which shall be set for hearing promptly thereafter.

*/s/ Diane W. Sigmund*
_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: February 7, 2008

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| PHILIP JAY BERG, | : | Bankruptcy No. 05-39380DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 7th day of February 2008, upon consideration of the Motion of the Chapter 7 Trustee for an Order Approving Settlement Agreement (the "Settlement Motion") By and Between the Trustee and Carpenters Funds of Philadelphia and Vicinity, after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Settlement Motion is **DENIED**. The Debtor, Philip Berg, shall have 15 days from the date of this Order to file an objection to or joinder in the Trustee's Objection; and

It is **further ORDERED** that the automatic stay of § 362(a) is lifted to allow the appeal from the Eastern District of Pennsylvania District Court in <u>Holsworth, et al. v. Berg</u>, C.A. No. 05-4033 to proceed.

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge