# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| PHILIP JAY BERG, | : | Bankruptcy No. 05-39380DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

## BY:  DIANE WEISS SIGMUND, United States Bankruptcy Judge

Before the Court is the Debtor's Objection to Proof of Claim (the "Objection") filed by Department of Treasury- Internal Revenue Service (the "IRS").  After an evidentiary hearing held on January 28, 2009 and consideration of the parties' briefs, the Objection will be denied for the reasons set forth below.

## BACKGROUND

Following a series of short-lived stopovers by the Debtor in Chapter 13 and Chapter 11 proceedings, this bankruptcy case, which was commenced on November 29, 2005, is concluding as a liquidation under Chapter 7.  Because the value of the estate exceeds the allowed claims to be paid by the Chapter 7 trustee, the benefit of any reduction in claims inures to Debtor.  Not surprisingly then, Debtor filed objections to numerous proofs of claim.  The resolution of this Objection, deferred for many months as discussed

below, is the only remaining one pending and therefore the only impediment to the

completion of the case with a full recovery to all claimants.

The Proof of Claim and the Objection. While the IRS filed three proofs of claim,

at issue here is the proof of claim dated August 25, 2006 (the "POC") asserting a claim in

the amount of $72,512.27 (the "Claim").[1] The Claim includes taxes (income and wage),

interest and penalties for the tax years 2002, 2003, 2004 and 2005.    Exhibit D-3.

The Objection, dated July 9, 2008, was short and to the point:

> "The Debtor believes that the sums reflected on the IRS' proof of claim
> are incorrect.  Notably, the claim asserts an estimated income tax liability
> for 2004 while the Debtor's 2004 federal income tax return is attached as
> Exhibit "B" indicating that no amount is due."

Doc. No. 403.

Debtor seeks disallowance of the POC because he filed a tax return for 2004 and

the POC states that the IRS claim is for estimated liability.[2]  Exhibit D-1.  However, Debtor

acknowledged at the hearing that he had received a 90-day notice of deficiency

---

[1]  The Claim was allocated as follows:  secured - $19,433.85; priority- $37,108.90; and unsecured- $15,969.52.  Since all creditors will be paid in full, the claim classification is irrelevant in this case.

Also not relevant is the first proof of claim dated January 19, 2006, Exhibit D-2, which was amended and superceded by the POC.  The third proof of claim, Exhibit D-3, was filed on December 8, 2008 during the pendency of the Objection.  It increased the amount sought by reason of increased interest and penalties for nonpayment and increased FICA and FUTA taxes for the period ending 12/31/05 following an assessment on 3/31/08 and 3/17/08 respectively.  Debtor never filed an Objection to the third proof of claim.

[2]  At the time the POC was filed the audit had not been completed and reference was made to an "estimated liability."  When the audit was completed and absent any substantiating documents to controvert the disallowances, the proof of claim only changed by $14.  However, the IRS did not amend the POC to strike the "estimated liability" reference.  The POC was finally amended in December as noted above and, inter alia, removed that reference.

(the "Notice") from the IRS in January 2007 based on his filed 2004 return of which the IRS was well aware. Exhibit US-1. The Notice stated an income tax deficiency for 2004 of $27,854 plus penalties under 26 U.S.C. § 6651(a)(1) in the amount of $6,963.50 for a late filed return and under § 6662(a) in the amount of $5,570.88 for substantial underpayment. The Notice  attached an itemization of Income Tax Examination Changes which memorialized the IRS' disallowance of most of the business deductions taken by the Debtor on his 2004 return.  Moreover, it explained his available options and the procedure to challenge the IRS's determination.  Id.[3]

Clearly the issue was not the IRS's failure to observe that Debtor had filed a return. Not unexpectedly at the hearing, the basis of the Objection changed from the one lodged in the filed Objection to a challenge to the disallowed deductions.  What has not changed is that the disputed claim is the 2004 income tax of $27,840.00 plus interest and penalties.[4]

The Adjournments and Document Production.  The initial listing of the Objection was on August 12, 2008.  At that hearing Debtor's counsel advised me that he was informed that an audit was ongoing and a continuance was requested and granted.[5]  After a fruitless follow-up hearing on September 16, 2008 at which the IRS did not appear due to lack of

---

[3]  While Debtor recalled receiving the Notice, he thought he probably just turned it over to his accountant or to his mother Rebecca Berg Nissenbaum ("Nissenbaum")  who has served as his bookkeeper for 28 years.  He had no recollection of responding to it.

[4]  Although Debtor objects to the total amount of the penalty, his only basis for the challenge is that the § 6662(a) penalty is unwarranted.  See p. 18-19 infra.

[5]  I have listened to the recordings of the proceedings in this contested matter on all the dates that they were scheduled.  As it were, counsel's information was incorrect; the IRS audit was completed shortly after the POC was filed.  Moreover, while his counsel was apparently not aware, Debtor had already been sent a Notice of Deficiency on January 9, 2007.  See supra.

notice by Debtor's counsel, a hearing was held on October 14, 2008. The IRS expressed a willingness to reconsider the POC upon submission by Debtor of documentary support for the deductions he had taken against his income in the 2004 tax return which were disallowed after the audit. Debtor contended he had not had an opportunity to look for his documents, that the movement of his law practice in late September complicated the search as files were in warehouse storage and that he needed more time. While he had reached an agreement with the IRS for a 90-day continuance to produce documents and have the IRS examine them for a possible resolution, I was not comfortable with the length of the adjournment given the prejudicial effect on creditors awaiting their distribution. The IRS stated that its agreement for the adjournment was based on Debtor's representation that he has documents that would be provided and they would substantiate the deductions. When queried about the necessity for that amount of time, Debtor responded that he was tied up in "heavy litigation" and would not be able to undertake the search for three weeks and then would need three to four more weeks to complete it. Finding that level of effort unacceptable, I gave Debtor 30 days to produce and verify that he produced all the documents he had. He then bargained for and was granted six weeks. I continued the hearing until November 25, 2008 to monitor the document production.

At the hearing on November 25, 2008, Debtor reported a new problem. No longer looking for his documents in the warehouse, he stated he had turned to his accountant for the

tax year 2004 for copies of all his supporting documents.[6]  To his surprise, he could not locate him and asked for an additional month to keep trying.[7]

By this hearing Debtor's requests for more time to locate his documents, including his explanations for why he had not been successful to date, had worn thin.  Because IRS counsel had traveled from Washington, D.C. each time to no productive end, I scheduled a conference call on December 17, 2008 for a final report on the production of documents. I was at that time advised by his counsel that Debtor was unable to obtain any documents as his accountant had them all and he could not locate the man.  Given the pendency of the Objection, I scheduled a final hearing on January 28, 2008 at which the parties were directed to appear and put on their cases.  They were advised that there would be no further continuances as the adjournments served no purpose anymore.[8]

_____

[6]  Since Debtor later testified that it was Nissenbaum who turned over the financial data necessary for preparation of his returns to the accountant, it would appear that Debtor would not know whether the documents were ever given to the accountant, if given, whether they were returned by him and if kept, whether he would have retained them for five years.

[7]  He stated that the accountant's phone was disconnected and Debtor sent him a certified letter to see if he was at his last known address.  He said he would get the return receipt back in several weeks.  I suggested that it might be quicker if he just drove over to his office which he later stated he did to no avail.

[8]  Notwithstanding this advice, on the day before the hearing, Debtor's counsel left a voice mail request to my deputy clerk for a continuance.  He stated that he had just heard from Debtor who informed him that his brother, who was the person who took care of all his tax papers, died. His counsel was advised that there would be no continuance unless Debtor was in mourning.  As it turned out, his brother died on December 6, **2007** and the death was not an impediment to Debtor's appearance.  However, the adjournment request was repeated through a memo to Debtor's counsel from Debtor which was dropped off at the intake counter for my deputy the morning of the hearing. Court-1.  The memo now reported that Nissenbaum, his 91 year old mother (whose name had never surfaced before as having any relevant knowledge or role in this matter), had been hospitalized and
(continued...)

The Evidentiary Record.  It is undisputed that Debtor operated his law practice in 2004.  Thus, Debtor argues it was improper for the IRS to disallow many of his business deductions in full.  However, he produced no evidence as to what those deductions should be.  Rather Debtor's attorney led him through his tax return, identifying various deductions and asking him to opine on whether they were "all legitimate."  Not surprisingly, he looked at his Schedules A and C and concluded they were "fair and accurate," and he could not state any reason they should be disallowed.  Tr. at 23-24.  His authentication of individual expenses produced nothing other than his unsubstantiated view that his deductions were "legitimate."[9]  The only specific point he made was that his 2004 deductions were completely in line with those taken on his 2001, 2002 and 2003 returns.  He did not, however, produce those returns, state what the deductions were or compare the operations

_____

(...continued)
could not testify as to her knowledge as Debtor's bookkeeper since 1985.  The adjournment request, which was denied again, was repeated at the commencement of the hearing and denied again.  I did agree to keep the record open if based on the Debtor's testimony I concluded that Nissenbaum had relevant information to his cause.  At the conclusion of the hearing, IRS counsel stated that she had no need to examine Nissenbaum and would accept Debtor's testimony as to Nissenbaum's bookkeeping skills and practices as true without corroboration, finding the testimony irrelevant. I asked Debtor whether if I assumed and therefore found that Nissenbaum would corroborate his testimony, he wished to compel his mother to testify.  After conferring with counsel, he stated that the testimony would not be necessary, and the record was then closed.

[9] For example, with respect to salaries for the people who worked for him, he stated that they were "very legit" and "are very traceable."  He did not attempt to do so.  Referring to his car and truck expenses, he confirmed that his law practice required him to drive throughout the southeastern Pennsylvania region and the driving expenses and automobile insurance would be "legitimate." He confirmed that he had office expenses, including the rental of "normal things to operate an office' where he probably had 10 people working.  He stated he had a building and therefore had repairs and maintenance expenses.  He stated that he had to buy supplies and concluded that $2,068 deduction was very reasonable.  He also confirmed that he had travel and entertainment expenses, such as when he would go to court, would buy the lunch and would get reimbursed later. That would appear in a different spot.  Finally he examined his deduction for utilities and once again concluded that these were very legitimate expenses.  Tr. at 25-28.

of his law practice in 2004 to these other periods.[10]  Thus, his observation as to prior years

had no probative effect.

Debtor also raised a generalized and conclusory objection to the FICA and FUTA tax

components of the claim.  While reluctant to state that the disallowance of the 2004 tax

deductions was his only objection, it appeared that he had not given any thought to what

else might have been objectionable in the POC.  Indeed nothing else was mentioned in

the filed Objection nor in any of the prior hearings.  However, when pressed, he proffered

a lukewarm and vague challenge to these other taxes.[11]

Documentation.  While it appears that the IRS left open the possibility that

Debtor could produce documentation at the hearing that would enable it to examine the

acceptability of the deductions he took to his 2004 income,[12] the Debtor clearly testified

---

[10]  On the contrary, he testified that after the events of 9/11 his law practice changed
drastically since insurance companies had "tightened their grips" on all kinds of payments.  After the
year 2001, he shifted from a mainly personal injury practice which is based on contingent fee
arrangements to a fee for service practice.  Tr. at 24.  How that impacted on his expenses and
the scale of his practice which he acknowledged had resulted in a diminished income that compelled
his bankruptcy filing in 2005 was not addressed.

[11]  I assume that this newly raised objection prompted the IRS to attach the Debtor's
941 forms to its brief in rebuttal to Debtor's contention that he had paid the taxes that were being
levied.  I agree with Debtor that the documents are not admissible as evidence as exhibits attached
to briefs not admitted into evidence will not be considered.  In re MacDonald, 222 B.R. 69, 72
(Bankr. E.D. Pa. 1998); In the Matter of Holly's, Inc., 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995).
Had the IRS moved to open the record to rebut this testimony, I would have allowed it since the IRS
had no notice that the 941 wage taxes were being challenged.  However, to the extent the objection
to the payroll taxes was properly before me, something I question, Debtor's testimony does not have
sufficient substance to shift the burden to the IRS to require any evidentiary support.

[12]  In fact, IRS counsel advised that she was accompanied by a revenue agent in the event
Debtor produced documents and it was prepared to examine them at that juncture.  Tr. at 59.

that he had not produced any supporting documents either prior to the hearing nor was he prepared to do so at the hearing. When questioned on the record about his efforts to produce substantiating documents, it was apparent that his search for the warehoused records, the original basis of the request for continuance after continuance, was cursory and indeed had been abandoned for the easier route of having them supplied by the accountant. Tr. at 35. He sought to justify his failure to look for his warehoused documents more than a "little" by the fact that his office building had been sold and the contents were now packed into five storage bins.[13] Thus, the focus of failure to substantiate his deductions with records became the disappearance of Marc Raiken, the accountant whom Debtor claimed had retained them after doing his tax returns. The credibility of that justification was challenged by the IRS which noted that Raiken's name does not appear on the 2004 tax return as tax preparer. Exhibit D-1.

Taking a new tack on the eve of the hearing, his mother was now proffered to supply evidence of the legitimacy of his deductions. He testified that Nissenbaum, although 87 years old at the time, had recorded all his expenditures using double entry bookkeeping and had kept complete records of every transaction that took place in his law firm for over 20 years. He "thought" she had a ledger and he "thought' she had supporting files in which she kept the supporting documents, none of which he could find because of the

---

[13]    Debtor appears to have lost sight of my judicial oversight of that sale and the accommodations that were provided to him for an orderly vacation of his office. See Stipulated Order dated April 19, 2007, Doc. No. 259. Moreover, when he moved out of the office, the IRS's Notice of Deficiency had already been issued so it can be no surprise that he would have to support his deductions and would need his documents which he was required by law to retain.

"hasty" move out of the office building. Tr. at 43. In Nissenbaum's absence,[14] Debtor testified that she told him that some of the records would be with Raiken and the rest in storage somewhere.

Acknowledging the absence of documents to support his deduction of business expenses, Debtor nonetheless contends that it was improper for the IRS to allow no deduction where it is apparent that, as he was operating his law practice in 2004, he would have had some quantum of business expenses that would qualify. The IRS contends that absent substantiation of his expenses, there is no means for it to determine what his expenses were and therefore there is no basis for it to establish allowable deductions.

## DISCUSSION

### I.

The legal principles that govern this dispute are very well established. It is often stated that "an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." Indopco, Inc. v. Comm'r, 503 U.S. 79, 84 (1992) (*quoting* prior Supreme Court cases). Moreover, the Commissioner's rulings are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Welch v. Helvering, 290 U.S. 111, 115

---

[14] The questionable utility of Nissenbaum's testimony as an unbiased corroborating witness as compared to the delay inherent in waiting for her illness to resolve for a court appearance prompted my request to the IRS as to whether it would assume Debtor's account of Nissenbaum's role in the record keeping (which the IRS failed to object to as hearsay) would be the testimony she would actually give. IRS counsel stated she believed Nissenbaum's testimony was not relevant and would accept Debtor's proffer.

(1933).   Since the IRS has provided no evidence in support of its proof of claim, the allocation of burdens of proof are significant in determining the outcome of this contested matter.

## A.

Before addressing the real issue at hand, I will dispose of the initial argument Debtor's counsel raises in his brief.   Boldly stating that the "IRS failed to give proper notice to the Debtor regarding any '"supposed" deficiency and/or disallowance of his deductions."   Debtor's Brief in Support of Objection ("Debtor's Brief") at 5, the Debtor's testimony to the contrary is surprisingly overlooked.   The IRS has produced the Notice, Exhibit US-1, which the Debtor admits receiving.   It also produced Patricia Taylor, a revenue agent for the IRS, who explained the policies, procedures and practices with respect to examining income tax returns.   She identified the Notice as setting forth the amount of the deficiency and penalty and providing the 90-day notice for the taxpayer to petition the Tax Court if he doesn't agree with the deficiency.   This notice follows a 30-day notice where the taxpayer is afforded the opportunity to appeal to a revenue agent's supervisor about the stated deficiency.   Debtor responded to neither notice.   His challenge to receipt of the Notice of Deficiency now is contrary to his testimony and in any event, too little, too late.

This erroneous claim is followed by the unequivocal statement that there has been no assessment of 2004 taxes, a claim not made in the Objection or at the hearing.[15] Id. Debtor refers to a number of cases that discuss the probative effect of a Form 4380, Certificate of Assessment when an assessment is being challenged. They are persuasive for the issues in those cases, i.e., whether a procedurally defective assessment is an impediment to the collection action being pursued by the IRS.[16] Davis v. Commissioner, 115 T.C. 35 (2000) which entailed a review of an IRS determination to proceed with collection of unpaid tax liabilities, is illustrative of this point. The Court expressly noted that the underlying tax liability was not at issue since the taxpayer, like Debtor here, had received a statutory notice of tax deficiency. Id. at 39. Thus it could not review the matter *de novo*. However, as the Commissioner cannot proceed with collection of taxes by way of a levy on a taxpayer's property unless notice and opportunity for hearing has been provided, the hearing entailed, inter alia, a review of the validity of the assessment. The Court concluded that the levy was proper since the Form 4380 "Certificates of Assessment" provided presumptive evidence of a valid assessment and no contrary evidence had been elicited. Since the issue in the

---

[15] It is therefore not surprising that the IRS responded by stating it would file the Form 4380 that the Debtor notes conclusively establishes an assessment which is presumed correct and valid absent any credible evidence to the contrary. Moreover, there is no evidence that the Debtor ever requested a copy of the assessment.

[16] For example, in Guthrie v. Sawyer, 970 F.2d 733 (10th Cir. 1992), the taxpayer contended that the tax liens against them were invalid because the IRS failed to establish procedurally proper assessments had been executed against them. In United States v. Tempelman, 111 F.Supp.2d 85 (D. N.H. 2000), the IRS sought to reduce to judgment federal tax assessments and to foreclose federal tax liens. The Court noted that a federal tax lien arises when three conditions are satisfied, the making of the assessment, the notice of the assessment and the failure to pay the amount demanded. Id. at 90. Both Davis v. Commissioner, 115 T.C. 35 (2000) and United States of America v. Estabrook, 78 F.Supp.2d 558 (N.D. Tex. 1999) were collection cases.

case before me is claim allowance, i.e., liability, not collection, these decisions do nothing to advance Debtor's position even had the assessment been challenged or this issue otherwise properly raised.  Leaving this red herring behind, I turn now to the real question: has liability been established?

## B.

While the general rule, as stated above, places the burden on the taxpayer of proving the IRS' determinations wrong, both parties acknowledge the applicability of 26 U.S.C. § 7491(a) which may in appropriate circumstances shift the burden of proof to the IRS to establish the basis for its determination, i.e., the disallowance of the deductions. That section provides in pertinent part:

> **1) General Rule.** - If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

Id.  Credible evidence for the purpose of interpreting and applying § 7941(a)(1) has been held to be "the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)."  Griffin v. Comm'r, 315 F.3d 1017,1021 (8th Cir. 2003).[17]

---

[17]   The quoted language is derived from the legislative history of § 7491(a).  Higbee v. Comm'r, 116 T.C. 438, 442 (2001) (quoting H.Conf.Rep. 105-599, at 240-241 (1998). As § 7491(a) was only added to the Tax Code in 1998, many of the cases cited by the parties do not apply this provision.

Without regard to the credibility of the evidence, paragraph (2) provides certain limitations on the applicability of paragraph (1), two of which are relevant here. Paragraph (1) shall only apply where (A) the taxpayer has complied with the requirements under this title to substantiate any item; and (B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews.   26 U.S.C. 7491(a)(2). Thus, to shift the burden to the IRS to prove that the deductions are not allowable, the Debtor must provide (1) credible evidence to support his deductions; (2) have complied with the requirement to substantiate his deductions; and (3) must have maintained all records required by the Tax Code and cooperated with the IRS.   Id.   See also Evan v. Comm'r, 2004 WL 1730295, at *3 (U.S. Tax Ct. Aug. 3, 2004).   The IRS contends none of these requirements have been met by Debtor.   I agree.

The IRS points to a case comparable to the facts I have before me.   In Kolbeck v. Commissioner, 2005 WL 2848030 (U.S. Tax Ct. Oct. 31, 2005), the taxpayer was unable to retrieve the records he used to prepare his tax return from the premises of his former office. In lieu thereof, he submitted an affidavit declaring that the entries on his Schedule C were accurate and correct.   The IRS proposed to disallow all the expenses for lack of substantiation.   A notice of deficiency was issued after he failed to attend the conference on his appeal.   The Tax Court found that the affidavit he submitted was insufficient to satisfy the requirements of § 7491(a) that petitioner introduce credible evidence, substantiate his deductions and cooperate with the IRS.   Id. at *2.

-13-

While the Tax Court recognized the requirement that a taxpayer must keep records to substantiate the amount of his deductions, 26 U.S.C. § 6001, 26 C.F.R. § 1.6001-1, it nonetheless noted that where certain expenses cannot be substantiated, they may be estimated.  Id. (*citing* Cohan v. Comm'r, 39 F.2d 540, 543-44 (2d Cir. 1930)).[18] However, the Kolbeck Court stated, "there must be a sufficient evidence in the record to provide a basis for the estimate."  Id.  The taxpayer's statement that his records were destroyed and his sworn declaration that his Schedule C expenses were accurate were not adequate substantiation.  In particular, the taxpayer made no effort to reconstruct his records or submit any documentation that would assist the court in evaluating the credibility of his statements or provide a basis to estimate the expenses.  His testimony at trial was very general regarding his various categories of expenses and he offered insufficient detail to estimate expenses in those categories.  See also Onarati v. Comm'r, 2005 WL 1693671, at *2 (U.S. Tax Ct. July 21, 2005) (§ 7491 not applicable where petitioner has failed to substantiate deductions and provide evidence other than his own testimony); Evan, 2004 WL 1730295 at *3 (burden not shifted as no credible evidence where substantiation consisted only of petitioner's oral or written testimony and no compliance with the substantiation and record-keeping requirements of the Tax Code); Higbee, 116 T.C. at 443-44 (burden of proof not placed on IRS where petitioner's self-generated receipts and other documents not credible evidence to substantiate the deductions).

---

[18]  The Cohan rule does not apply to certain expenses, such as cell phones, automobiles and trucks, which are governed by the strict substantiation requirement of § 274(d).  Certain, but not all, of Debtor's expenses belong to this category.  However, as I find Debtor to have provided no basis to estimate his expenses at all, I need not distinguish this group.

As the recitation of the record evidences, the Debtor's testimony about his expenses was general and conclusory.  While he repeatedly affirmed the accuracy and fairness of the deductions he took, he gave me no basis to confirm that was so.  He failed to corroborate any expense or attempt to reconstruct any of his expenses, indeed stating with respect to his employees that the IRS could verify those expenses through their own records.  While he asked for and was given extra time to locate his records which he claimed were available in storage, he made only the most meager effort to find them.  Although I have no reason to doubt the disappearance of the accountant, that justification for non-production came belatedly and was again used to delay the hearing on the Objection.  Until the end, he was seeking to avoid the hearing, belatedly claiming that his mother was a necessary witness.  To the extent that cooperation is relevant in the § 7491(a) analysis, Debtor has failed to demonstrate a willingness to assist the IRS in coming to some reasoned conclusion about his expenses.  Indeed when IRS counsel asked him how the IRS could fix his deductions, he had no answer, presumably other than to simply accept his numbers.

In response to the foregoing cases, Debtor cites Griffin v. Comm'r, 315 F.3d 1017 (8th Cir. 2003) where the Court of Appeals reversed a Tax Court ruling that the taxpayers had not produced sufficient credible evidence to shift the burden to the IRS.  The Tax Court had found that the taxpayer's testimony that he made the real property tax payments on behalf of his subchapter S corporation to protect his own real estate and construction business was not credible evidence.  The appellate court found the taxpayer's testimony

-15-

credible as to his need to pay the corporate taxes to preserve the integrity, good will and

banking relationship of his personal business. The issue in Griffin was the availability of a

personal deduction for an expense paid for the benefit of a corporation, not, as here, whether

the expenses were paid. The legal issue turned on whether there was a legitimate basis for

allowability, not the amount of the deduction. The appellate court found there was credible

evidence of allowability and remanded the case to the Tax Court to resolve the merits under

the shifted burden of proof.[19]

## II.

Having concluded that Debtor has not shifted the burden of proof to the IRS, I must

now consider whether he has overcome the presumption of correctness that attaches to the

Commissioner's determinations regarding the deductibility of business expenses that are

permitted under 26 U.S.C. § 162(a). For the same reasons discussed above, I find that he has

failed to do so. His only evidence in support of the deductions is his vague and conclusory

testimony that they were "very appropriate."[20] He has failed to keep records as required by

---

[19]  Debtor also cited Gale v. Commissioner, 2002 WL 273164 (Tax Court Feb. 27. 2002)
and Tanner v. Commissioner, 65 Fed.Appx. 508, 2003 WL 19922926 (5th Cir. March 23, 2003).
Neither support his position. In Gale, the Court expressly found that the shifting burden of § 7491
did not apply since the examination commenced before its effective date of July 22, 1998, and
placed the burden on the taxpayer. In Tanner, the notice of deficiency was based on unreported
income from the exercise of stock options which was supported by a corporate filing. The appellate
court affirmed the Tax Court's finding that the petitioner had not shifted the burden under § 7491
because the taxpayer did not provide any evidence to dispute the operative facts.

[20]  Thus the record bears no resemblance to the facts of Demkowicz v. Commissioner, 551
F.2d 929 (3d Cir. 1977). In Demkowicz, the Court held that the Tax Court was not bound to accept
(continued...)

the Tax Code and regulations and while estimation is permissible under appropriate

circumstances where records are lost or unavailable, there is no foundation or basis for an

estimation here.

The Debtor contends that since it is undisputed that he operated a business, it is

undisputed that he had business expenses.  The argument begs the questions.  What and how

much were the expenses?  While Debtor in his brief recognizes that the court must have

a basis upon which to make an estimate, his conclusion that his testimony provided that

basis is misguided.  There is simply no evidence on this record which would allow me to

determine the allowed deductions.  Nor am I persuaded that the decision of the Bankruptcy

Court in In re Lester, 51 B.R. 289 (Bankr. M.D. Fla. 1985), cited by Debtor, compels a

different outcome.  In Lester, the debtors had kept almost no business records until they were

audited in 1982.  Afterwards they kept a "log" of their expenses but no underlying

_____

(...continued)
a taxpayer's uncontroverted testimony if it found the testimony to be improbable, unreasonable or
questionable.  The issue was  unreported income, i.e., proceeds of a corporate loan diverted to the
personal use of the principal.  The Tax Court concluded that the testimony, in the absence of
corroborative evidence, was insufficient to overcome the presumption of correctness.  The Third
Circuit reversed finding the taxpayer's evidence, i.e., a bank statement showing the withdrawals and
the taxpayer's testimony of the use of the funds and unequivocal denial of any personal benefit from
the proceeds, to be sufficient to shift the burden.  I agree with the appellate decisions that have
construed Demkowicz to be limited to the issue of proof of receipt of funds determined to be income
which could be established by such testimony and not explanation of the expediture of the funds
which would require further evidence to shift the burden.  Liddy v. Commissioner, 808 F.2d 312,
315 (5th Cir. 1986).  See also Laney v. Commissioner, 674 F.2d 342, 350 (5th Cir. 1982).  In any
event, I cannot conceive that uncorroborated taxpayer testimony of the reasonableness or accuracy
of deductions would shift the burden to the IRS since it would swallow the statutory requirement
that a taxpayer keep records to establish the amount of his deductions. 26 U.S.C. § 6001, 26 C.F.R.
§ 1.6001-1.  Consistent with Demkowicz, I believe the Third Circuit would find Debtor's testimony,
in the context of allowability of deductions, to be insufficient.

documents until late 1983 when they began to pay their business expenses by check and
retain related documents.   They then hired a certified public accountant to prepare an
unaudited financial statement for 1983 and, significantly, an estimated business expense
schedule for 1980 and 1981, the tax years being challenged.  The court concluded:

> This Court agrees with the <u>Cohan</u> Court and finds that it is error to completely
> disallow expenses where it is evident that money has been spent in order to
> operate a business and generate taxable income.  Therefore, the question in
> this case becomes whether the method of expense reconstruction offered by
> the Debtors to establish their tax liability for the years in question, represents
> a reasonable basis for estimating their 1980 and 1981 tax liability.  This Court
> is satisfied that the estimated business expenses, net income and tax liability
> calculated and offered by William J. Forbes, C.P.A. are reasonable and will
> be accepted by this Court in <u>light of the narrow facts</u> of this case.

<u>Id.</u> at 291 (emphasis added).   Debtor seizes upon the <u>Lester</u> Court's conclusion that
wholesale disallowance is unwarranted where it is evident that money has been spent
and fails to recognize that there must also be a reasonable basis to estimate the tax liability.
In <u>Lester</u>, where the debtors proffered estimated expenses, net income and tax liability
calculated by a certified public accountant, a reasonable basis was found.  This is a far cry
from the Debtor's testimony that his deductions were consistent with those taken in
prior years.  No reasonable basis is present here.

## III.

As noted above, the IRS seeks penalties under both §§ 6651(a)(1)[21] and 6662(a).[22]

While objecting to the imposition of any penalties, the Debtor only addresses the IRS's

entitlement to penalties under § 6662(a), commonly referred to as the accuracy-related

penalty.  Debtor's Brief at 12-13.  The IRS contends that this penalty is applicable due to

---

[21] Section 6651(a)(1) provides:

(a) Addition to the tax.--In case of failure--

> (1) to file any return required ..., on the date prescribed therefor (determined with
> regard to any extension of time for filing), unless it is shown that such
> failure is due to reasonable cause and not due to willful neglect, there
> shall be added to the amount required to be shown as tax on such
> return 5 percent of the amount of such tax if the failure is for not more
> than 1 month, with an additional 5 percent for each additional month
> or fraction thereof during which such failure continues, not exceeding
> 25 percent in the aggregate;

Debtor does not dispute the IRS's determination of a late filing.  While Debtor failed to date his
return, the time-stamped copy shows a date stamp of February 22, 2006. Exhibit D-1.

[22] Section 6662(a) provides as follows:

**(a) Imposition of penalty.**--If this section applies to any portion of an underpayment
of tax required to be shown on a return, there shall be added to the tax an amount
equal to 20 percent of the portion of the underpayment to which this section applies.

**(b) Portion of underpayment to which section applies.--**This section shall apply
to the portion of any underpayment which is attributable to 1 or more of the following:

> **(1)** Negligence or disregard of rules or regulations.

> **(2)** Any substantial understatement of income tax.

> **(3)** Any substantial valuation misstatement under chapter 1.

> **(4)** Any substantial overstatement of pension liabilities.

> **(5)** Any substantial estate or gift tax valuation understatement.

Subparagraphs (b)(1) and (2) are relied upon by the IRS.

Debtor's substantial underpayment of taxes resulting from negligence or disregard of the tax rules or regulations.[23]  Citing 26 C.F.R. § 1.6662-3(b)(1), it avers that Debtor's failure to keep proper records or substantiate reported expenses was negligent.  Negligence for the purpose of this statutory provision is defined to  include "any failure to make a reasonable attempt to comply" with the provisions of the Internal Revenue Code; the term "'disregard' includes any careless, reckless, or intentional disregard." 26 U.S.C. § 6662(c).

Section 7491(c) places the burden on the IRS to establish the imposition of any penalty, i.e., the Commissioner must come forward with sufficient evidence that it is appropriate to impose a penalty.[24]  The accuracy-related penalty will not apply as to any portion of the understatement as to which the taxpayer acted with reasonable cause and in good faith.  26 C.F.R. § 1.6664-4.  The determination of reasonable cause and good faith depends on all the pertinent facts and circumstances.  Higbee, 116 T.C. at 448 (citing 26 C.F.R. § 1.6664(b)(1)).  The Higbee Court identified relevant factors to that determination to include "the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable good faith reliance on the advice of a professional such as an accountant." Id.

---

[23]  Substantiality of the underpayment is apparent from the record and in any event is not challenged.

[24]  That section provides with respect to penalties:

--Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.

Significantly, the legislative history of § 7491(c), that imposes the initial burden of production on the IRS where penalties are imposed, recognizes that reasonable cause and good faith are defenses as to which the IRS need not produce evidence.  Higbee, 116 T.C. at 446 (*quoting* H.Conf.Rept. 105-599, at 241 (1998)).  Rather once the IRS meets its burden of production, the burden shifts to the taxpayer to produce evidence to show that the IRS determination was incorrect or that reasonable cause or good faith should excuse the penalty. Against this statutory framework, I must consider the parties' respective positions.

Faced with the record as discussed above, the Debtor simply argues once again that he deducted all his reasonable expenses for the costs of running his law practice and the IRS produced no evidence to the contrary.  The Debtor misunderstands the law in resting on the absence of IRS evidence to avoid the imposition of penalties.  The IRS did not have, as he insists, a "burden of proof" but rather burden of production.  I have already determined that on this record the IRS has established a $27,000 understatement of income taxes because the Debtor failed to meet his burden to overcome the statutory presumption of correctness that obtains to the Commissioner's rulings.  I also found that the Debtor failed to maintain records of his expenses and failed to substantiate the deductions he has applied to his 2004 return.  The IRS thus met its burden of production, and the burden then shifts to the Debtor to establish reasonable cause or good faith.

If the touchstone of negligence is whether the taxpayer has made a reasonable attempt to comply with the provisions of the Internal Revenue Code, then Debtor's efforts

to assess his proper tax liability by substantiating his deductions is the measure of reasonable cause. Debtor has been aware since the Notice was issued in January 2007 that the IRS was questioning his business expense deductions. He is a litigation attorney and is aware more than most of the need to support a position that is being challenged. He did nothing to locate his business records prior to the IRS's proof of claim being filed. He did nothing to segregate the records at the time he vacated his office space even though he knew of the IRS's determination. He continued to do nothing to locate his business records after he objected to the proof of claim and put the amount of those deductions at issue. Once the Claim Objection was scheduled for hearing, he made, by his own admission, little effort to locate the records in his storage bins. The only effort that the Debtor made was to secure continuances– first allegedly to search for documents in storage, then to find the missing accountant who he claimed had the records that he previously said were in storage, then to have his mother testify, even though she would only state that they were in storage or with the accountant. Even assuming this was a credible explanation for the absence of his supporting documentation, it does not explain why no other effort was made to recreate the records, provide third party verification of the expenses paid or at a minimum, testify about the finances of the practice in 2004 versus prior years and compare the deductions taken. The Debtor did nothing, inexplicably resting on the theory that an operating business has expenses so his deductions had to be accepted. This is not a reasonable attempt to comply with the provisions of the Tax Code and evidences at best a

carelessness that equates to disregard.  As Debtor has not established reasonable cause or that he acted in good faith with respect to the underpayment, the penalty will stand.

**CONCLUSION**

Since it is the Debtor's burden to prove the amount of his expenses in order to substantiate his deductions and since he has failed to provide anything other than generalized and self-serving testimony, I am compelled to overrule the Claim Objection. Moreover, I conclude that the IRS has met its burden to establish negligence and disregard in connection with the substantial underpayment so as to warrant the penalty imposed.  An Order consistent with the foregoing Memorandum Opinion shall be entered.

_____

DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: April 1, 2009